In the Matter of the ESTATE of Ernest E. VOELKER, Deceased.

FIRST SECURITY BANK AND TRUST COMPANY, Appellant,

v.

Arnold VOELKER, Executor of the Estate of Ernest E. Voelker, Deceased, Appellee.

No. 2–57875.

Supreme Court of Iowa.

April 20, 1977.

Noah, Smith & Ott, Charles City, for appellant.

Alfred A. Beardmore, Charles City, for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLEN-HOPP, JJ.

RAWLINGS, Justice.

First Security Bank and Trust Company (First Security or claimant) appeals from trial court's adverse adjudication in probate on hearing requested by First Security after denial of its claim against Arnold Voelker, executor of the estate of Ernest E. Voelker, deceased (executor). We affirm.

First Security's claim was predicated on three security supported promissory notes executed and given it by Kenneth Elliott, co-signed by Ernest E. Voelker (decedent), admitted accommodation party. Various payments had been made on these notes, a balance of $10,586.73 being allegedly unpaid and owing.

One item of collateral on the instantly involved supplemental financing statement bearing date July 27, 1973, was sixty acres of growing corn. In drafting this security instrument claimant failed to describe the land upon which the crop was being grown. As a result another of Kenneth Elliott's creditors gained priority over First Security and accordingly received $6,239.06, sale proceeds from the corn.

In resisting First Security's claim the executor contended decedent was released from liability on his accommodation obligation to the extent of collateral lost ($6,239.06) as the result of claimant's negligence in drafting the supplemental security agreement here in question. Trial court agreed, and pro tanto released the accommodation party but allowed the remainder of said claim.

As stated by claimant, the sole issue here raised is:

"Whether the failure of the secured party through negligence to perfect a security agreement and financing statement by legally describing sixty acres of corn relieves a guarantor and co-maker on promissory notes from liability to the secured party—the claimant in this case."

■■■ I. This proceeding for judicial establishment of a contested claim was properly tried in probate as a law action. Consequently, our review is confined to the issue here raised, not de novo. If trial court's findings of fact are supported by substantial evidence, and were not induced by an erroneous view of the law, they will stand. Furthermore, we are neither bound by findings of fact resulting from application of an erroneous rule of law, nor trial court's determination of the law. See *Flexsteel Ind., Inc. v. Morbern Ind. Ltd.*, 239 N.W.2d 593, 596 (Iowa 1976); *In re Estate of Northup*, 230 N.W.2d 918, 921 (Iowa 1975); *Solbrack v. Fosselman*, 204 N.W.2d 891, 893 (Iowa 1973); Section 633.33, The Code 1973.

II. At the outset, several statutes presently come into play.

Section 554.9105, The Code 1973, says:
"1. In this Article unless the context otherwise requires:
" * * *
"b. 'Chattel paper' means a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods. When a transaction is evidenced both by such a security agreement or a lease and by an instrument or a series of instruments, the group of writings taken together constitutes chattel paper;
"c. 'Collateral' means the property subject to a security interest, and includes accounts, contract rights and chattel paper which have been sold;
" * * *
"h. 'Security agreement' means an agreement which creates or provides for a security interest;
"i. 'Secured party' means a lender, seller or other person in whose favor there is a security interest, including a person to whom accounts, contract rights or chattel paper have been sold. When the holders of obligations issued under an indenture of trust, equipment trust agreement or the like are represented by a trustee or other person, the representative is the secured party."

Also, prior to amendment by the 1974 Session of the Sixty-Fifth General Assembly, ch. 1249, § 57, not here relevant, Code § 554.9402 stated:
"1. A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. *When the financing statement covers crops growing or to be grown* or goods which are or are to become, fixtures, *the statement must also contain a description of the real estate concerned.* A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties." (emphasis supplied).

See also Code § 4.1(36)(b).

■ Additionally, as to its duties in connection with an instrument or chattel paper, a secured party must exercise reasonable care, including the taking of necessary steps to preserve rights against prior parties, unless otherwise agreed. Concurrently, a secured party is liable for any loss caused by his failure to exercise such reasonable care. See Code § 554.9207(1)(3). See also 2 Uniform Commercial Code, Official Comment 5, § 3–606 (Master ed. 1968); White & Summers, Uniform Commercial Code, §§ 13–14, at 434–435 (1972).

■ III. Relevant facts in this case are not controverted. Rather, the dispute focuses upon trial court's application of the law, particularly Code § 554.3606 as amended by the Sixty-First General Assembly, ch.

413, § 3606, effective July 4, 1966. In pertinent part it provides: "1. The holder discharges any party to the instrument to the extent that without such party's consent the holder (a) * * * (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

Unquestionably, the involved security agreement constituted a subjecting of collateral for notes given by Elliott to claimant. On the other hand, as aforesaid, the growing corn was lost as collateral because of claimant's failure, in drafting the supplemental security agreement, to describe the real estate upon which said crop was located despite the aforesaid Code § 554.9402 requirement.

In light of the foregoing, we now hold First Security Bank and Trust Company (1) negligently failed to perfect its security interest in the growing corn crop, (2) thereby causing same to be subordinated to the interest of a third party, and (3) this constituted an unjustifiable impairment of such collateral, which (4) served to discharge the accommodation party, Ernest E. Voelker, and in turn the executor of his estate, from liability to the extent of such impairment of the collateral. See *Wohlhuter v. St. Charles Lumber & Fuel Co.*, 16 UCC Rep. 792, 25 Ill.App.3d 812, 323 N.E.2d 134, 138, n. 2 (1975); *White v. Household Finance Corp.*, 13 UCC Rep. 858, 302 N.E.2d 828, 835 (Ind.App.1973); *American Bank of Commerce v. Covolo*, 17 UCC Rep. 1052, 88 N.M. 405, 540 P.2d 1294, 1296–1297 (1975); *Beneficial Finance Co. of Norman v. Marshall*, 18 UCC Rep. 1014, 551 P.2d 315, 317–318 (Okla.App.1976); *Peoples Bank of Point Pleasant v. Pied Piper Retreat, Inc.*, 14 UCC Rep. 1398, 209 S.E.2d 573, 577–578 (W.Va. 1974); *Shaffer v. Davidson*, 5 UCC Rep. 772, 445 P.2d 13, 15 (Wyo.1968). The issue raised by plaintiff is without merit.

Any prior holdings by this court deemed inconsistent herewith are, to that extent, hereby overruled.

AFFIRMED.