In re Earl Franklin NUNLEY, Monique Andrea Nunley, Debtors.

ASSOCIATES COMMERCIAL CORPORATION, Plaintiff,

v.

William L. LANCASTER, Trustee, Defendant.

Bankruptcy No. 3–81–01863.

United States Bankruptcy Court, E. D. Tennessee.

July 14, 1982.

Stone & Hinds, P. C., Steven D. Lipsey, Knoxville, Tenn., for plaintiff.

---

William S. Nunnally, Greenville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

### I

The dispute in this case between the plaintiff, Associates Commercial Corporation, and the defendants, the debtors[1] and their trustee, involves a 1979 Freightliner tractor truck. The plaintiff contends that it is the holder of a perfected security interest against the vehicle in question, whereas the trustee alleges that the security interest of the plaintiff is unperfected. The issue is whether or not the trustee may defeat the security interest of the plaintiff on the basis that: (i) the vehicle was *registered* in a jurisdiction other than the jurisdiction which *issued* the certificate of title for the vehicle; (ii) no action was taken by the plaintiff secured creditor within the four-month period following removal, subsequent to the change of residence by the debtors from one jurisdiction to another and the concomitant removal of the vehicle into the jurisdiction of the debtor's new residence. See Va.Code § 8.9–103(2), *infra*.

The parties are in agreement as to the following facts:

Earl Franklin Nunley purchased a 1979 Freightliner tractor truck, serial number CA213HL171013, on July 30, 1980, from Atlanta Freightliner Truck Sales and Service, Inc., Atlanta, Ga. A security agreement was executed by Nunley and assigned to Associates Commercial Corporation. Nunley had knowledge of this assignment, as evidenced by the fact that he submitted monthly installment payments to Associates through their Georgia offices for a period of more than one year beginning in September of 1980. Associates forwarded the necessary documentation to the appropriate office in the Commonwealth of Virginia, which was the state of Nunley's residence when the tractor truck was purchased, for the purpose of obtaining a certificate of title reflecting the existence of Associate's first lien. (Nunley is a truck driver who leases his services to various carriers. His work requires that he drive his truck through many of the contiguous states.) A Virginia title certificate was issued on September 5, 1980, but the title certificate contained an erroneous serial number. (The serial number which appears on the certificate of title is CA214 HL171013. The correct serial number is CA213 HL171013.)

When Nunley purchased the vehicle in question, he was employed by Watkins Motor Lines, which informed him that he would have to register the tractor truck in either Florida or Georgia. A Florida Vehicle Registration Certificate bearing the correct serial number of the truck was issued on November 10, 1980. This registration expired on June 30, 1981.

In February of 1981, Nunley entered into a contract for the lease of his tractor truck and services with the Interstate Contract Carrier Corporation. His new employer informed him that he would be required to register his truck in either Illinois, Oklahoma or Utah. The debtor chose Oklahoma, and an Oklahoma registration was issued on May 11, 1981. The tractor truck was proportionally registered between the state of Oklahoma and 25 other states, including Tennessee and Virginia.

The debtors were residents of Virginia until August 5, 1981, when they moved to Tennessee. Associates was directly informed by Nunley of his change of residence. The debtors filed their chapter 7 bankruptcy petition on December 14, 1981, which was more than 120 days after their change of residence from Virginia to Tennessee.

The only action taken by Associates to perfect its security interest was the procurement of the Virginia certificate of title reflecting its first lien claim. Neither Associates nor Nunley sought issuance of a new title from any state in which the vehicle was reregistered and no state other than Virginia has issued a certificate of title covering the vehicle.

---

1. A default judgment has been entered against the debtors.

## II

The plaintiff filed a complaint seeking relief from the automatic stay of 11 U.S.C.A. § 362 on February 9, 1982. The plaintiff alleged that: (1) the debtor had monetarily defaulted on a conditional sales contract assigned to the plaintiff; (2) plaintiff has a validly perfected security interest in a Freightliner tractor truck, the fair market value of which was less than the unpaid secured debt; (3) physical damage insurance on the security vehicle had been cancelled and the vehicle had been abandoned.

■ In his answer, the trustee denied that the plaintiff had a validly perfected security interest. The trustee alleged that the title certificate was ineffective since there was a variance between the actual serial number of the vehicle and the serial number reflected on the title certificate.[2] Additionally, the trustee alleged that "the subject vehicle was subsequently reregistered in the states of Florida and Oklahoma so as to require the proper notation in the respective states by the plaintiff in order to maintain the claim of a perfected security interest."[3]

The trustee takes the position that Virginia law is applicable in determining the outcome of this case. The trustee further believes that the outcome is to be determined by application of Va.Code § 8.9–103(2), which provides in apposite part:

(2) Certificate of title.

(a) This subsection applies to goods covered by a certificate of title issued under a statute of this state or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.

(b) Except as otherwise provided in this subsection, perfection and the effect of perfection or non-perfection of the security interest are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the certificate until four months after the goods are removed from that jurisdiction and *thereafter until* the goods are *registered in another jurisdiction*, but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this section. (Emphasis added.)

The defendant trustee asserts that the reregistration in Florida and Oklahoma, which *preceded* the debtor's change of residence, coupled with the passage of more than 120 days from the date on which the debtors moved from Virginia to Tennessee and the accompanying removal of the collateral, cut off the perfected lien of the plaintiff, absent the issuance of a new title certificate in Tennessee within the four-month statutory period.

The plaintiff-lender, Associates, presents a tripartite argument. Initially, the plaintiff takes the position that the Virginia certificate of title serves to perfect its security interest and that "the debtors' multiple, nonresident registration of the truck" and subsequent move to Tennessee are inconsequential with regard to the perfection of the plaintiff's security interest in the tractor truck. Secondly, the plaintiff argues that Va.Code § 8.9–103(2) is inapplicable to the instant facts since: (a) the motor

---

**2.** In their briefs, the parties did not address the issue of the mistake in the serial number shown in the certificate of title. However, a single digit error in a financing statement, absent prejudice, is harmless. *Still Associates v. Murphy,* 358 Mass. 760, 267 N.E.2d 217, 8 U.C.C.Rep.Serv. 929 (1971); *In re Esquire Produce Co., Inc.,* 5 U.C.C.Rep.Serv. 257 (E.D.N.Y. 1968). See also *City Bank & Trust Co. v. Warthen Service Co.,* 16 U.C.C.Rep.Serv. 1370 (Nev.1975) wherein the Nevada Supreme Court held that the omission of the first digit of a twelve digit serial number in a financing state-

ment was a minor error which did not affect the validity of a security interest in an automobile. Compare *Matter of Elridge,* 10 B.R. 835 (Bkrtcy.E.D.Mich.1981) in which a four digit error resulted in a failure to perfect a security interest in a vehicle.

**3.** By agreement of the parties, the vehicle has been sold by the trustee for $29,000.00, which was the highest bid at an advertised sale. The bid price, less expenses, has been paid by the plaintiff and deposited in an escrow account of the trustee pursuant to an order of the court.

vehicle in question was removed from as opposed to being brought into Virginia; (b) Va.Code § 8.9–302(4) provides that duration of a perfected security interest is governed by Va.Code § 46.1–68 through §. 46.-1–98.1. Finally, the plaintiff asserts that the perfection of its security interest in the tractor truck is continued even if Va.Code § 8.9–103(2) is controlling.

### III

The starting point to resolve this conflict is T.C.A. § 47–9–103. Subsection (2) thereof provides in part:

(2) If the chief place of business of a debtor is in this state, this chapter governs the validity and perfection of a security interest and the possibility and effect of proper filing with regard to general intangibles or with regard to goods of a type which are normally used in more than one (1) jurisdiction (such as automotive equipment, rolling stock, airplanes, road building equipment, commercial harvesting equipment, construction machinery and the like) if such goods are classified as equipment or classified as inventory by reason of their being leased by the debtor to others. Otherwise, the law (including the conflict of laws rules) of the jurisdiction where such chief place of business is located shall govern. If the chief place of business is located in a jurisdiction which does not provide for perfection of the security interest by filing or recording in that jurisdiction, then the security interest may be perfected by filing in this state.

The chief place of business of the secured debtor is in Tennessee. Consequently, the provisions of T.C.A. § 47–9–101 et seq. are apposite.

T.C.A. § 47–9–103(4) provides that:

Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which *issued* the certificate. (Emphasis added.)

Consequently, since Virginia does require indication on a certificate of title of any security interest in a motor vehicle, the laws of the Commonwealth of Virginia are applicable in this case. (The parties do not dispute this conclusion.)

Va.Code § 8.9–302 provides in pertinent part:

. . . . .

(3) The filing of a financing statement otherwise required by this Article is not necessary or effective to perfect a security interest in property subject to

. . . . .

(b) the following statutes of this state; §§ 46.1–68 through 46.1–98.1. . . .

(4) Compliance with a statute or treaty described in subsection (3) is equivalent to the filing of a financing statement under this title, and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith except as provided in section 8.9–103 on multiple state transactions. *Duration and renewal of perfection of a security interest perfected by compliance with the statute or treaty are governed by the provisions of the statute or treaty; in other respects the security interest is subject to this title.* (Emphasis added.)

The continuity and duration of the perfection of the security interest of Associates against the tractor truck is governed by Va.Code § 46.1–68 et seq., unless Va.Code § 8.9–103 is applicable.

The facts in the instant case are similar but not identical to the facts in a recent Sixth Circuit Court of Appeals decision. *Uhle v. Parts and Trucks* (*In re Paige* ), 679 F.2d 601 (6th Cir. 1982) involved a debtor, a Michigan resident, who purchased a truck tractor in Indiana. A purchase money security agreement executed by the debtor was assigned to Associates Commercial Corporation, who is also the assignee of the security agreement involved in the subject dispute. The debtor drove as an interstate

hauler for a company whose terminal was in Indiana and whose home office was in Minnesota. However, the debtor's employer also had a business office in Illinois. An agent of debtor's employer prepared an application for an Illinois certificate of title, which was subsequently issued. The certificate of title reflected the security interest of Associates. No financing statement was filed and no other certificate of title had been sought when Paige, the debtor, filed bankruptcy.

The Bankruptcy Court (Judge Nims) held that the security interest of Associates, although noted on the Illinois title certificate, was unperfected under Michigan law and invalid vis-a-vis the bankruptcy trustee. *In re Paige*, 3 B.R. 115 (Bkrtcy.W.D.Mich. 1980). The district court affirmed Judge Nims' holding in an unpublished order.

The court of appeals noted that the issue was simply whether or not the notation of the lien on the Illinois certificate of title served to perfect the security interest under Michigan law. The court of appeals concluded that Judge Nims erred in his interpretation of Mich.Stat.Ann. § 19.9103(4); M.C.L.A. § 440.9103(4), which is identical to T.C.A. § 47–9–103(4), quoted heretofore. The court of appeals based its conclusion on a literal reading of U.C.C. § 9–103(4), which clearly provides that perfection is to be governed by the law of the certificating state if that state requires notation of a security interest on a certificate of title as a condition of perfection. The court noted that Illinois does require such a notation on a certificate of title and found Illinois law applicable, which meant that the security interest of Associates was properly perfected vis-a-vis the trustee.

In *Paige*, as in the instant case, the certificating state had adopted the 1972 version of the U.C.C. The respective destination states, Michigan and Tennessee, each have the 1962 version of the U.C.C. as the source of law for commercial transactions. The only distinguishing fact which may be material is that there is no report of any registration in any state other than Illinois in the *Paige* case, whereas there were mul-

tiple registrations in the instant case, all of which *preceded* the removal of the vehicle from Virginia to Tennessee. This factor does not, in this court's opinion, preclude the application of the *Paige* decision to determine the outcome of the instant case.

The trustee cites *Patti v. Barnett Bank* (In re *Hartberg*), 25 U.C.C.Rep.Serv. 1429 (Bkrtcy.E.D.Wis.1979), in support of his position that the Associates' security interest is unperfected in the subject case. The debtors in *Hartberg* had purchased a vehicle in November of 1976, while residing in Florida. A security agreement was executed by the debtors in favor of Barnett Bank, and a Florida certificate of title was issued on December 10, 1976. The certificate of title, which reflected the security interest of the bank, was retained by Barnett Bank. In September of 1977, the debtors established a residence in Wisconsin, where the security automobile was registered on December 3, 1977. No certificate of title was issued by the State of Wisconsin. The debtors filed bankruptcy on July 3, 1978, which was 3 months after the debtors stopped making payments to Barnett Bank.

The bankruptcy trustee contended that the lien was never perfected in Wisconsin. Judge Hilgendorf agreed with the bankruptcy trustee. The holding of the case is that a secured creditor whose interest is noted on a certificate of title must take action within 4 months from the date of removal to continue the perfection of his interest in a motor vehicle which is removed from the certificating jurisdiction and *registered* in another jurisdiction.

The plaintiff does note in its brief, based on the following quotation from *Hartberg*, that the decision might have been different if the case had been decided under the provisions of the 1962 Code:

> The original 1962 version of the Uniform Commercial Code relating to motor vehicles was substantially different from the 1972 official text which was adopted in Wisconsin in 1973. The 1962 Code was interpreted by most courts to grant priority to a lien holder whose lien was per-

fected by indication on the certificate of title regardless of where the automobile may have been taken and regardless of the period of time it remained in another jurisdiction. *Hartberg,* 25 U.C.C.Rep. Serv. at 1432.

It is arguable that the decision in *Hartberg,* is incorrect. The district court in the case of *Strick Corp. v. Eldo-Craft Boat Co., Inc.,* 479 F.Supp. 720 (W.D.Ark.1979) interpreted "registered", as that term is employed in U.C.C. § 9–103(2), to require the procurement of a certificate of title. The court noted:

> It is the opinion of this Court that the section just quoted (U.C.C. § 9–103(2)) continues in force the perfection of a security interest noted on a foreign certificate of title until a certificate has been issued by another jurisdiction. *Strick,* 479 F.Supp. at 725.

A more "customary" interpretation of registration is found in the district court's opinion in the case of *In re Howard,* 9 B.R. 957 (N.D.N.Y.1981). The bankrupt had purchased a truck in November of 1978 from a Massachusetts dealer. The security interest of GMAC was duly noted on the Massachusetts title certificate. In January of 1979, the bankrupt moved from Massachusetts to New York. The security vehicle was registered in New York in July of 1979, but no title certificate was issued in conjunction with the registration. In a contest between GMAC, the secured creditor, and the bankruptcy trustee, the district court affirmed the decision of the bankruptcy court that the GMAC security interest was unperfected. The decision was based on the "plain language" of U.C.C. § 9–103(2)(b) and the fact that the debtor's truck was reregistered in New York more than 4 months after its removal from Massachusetts.

 This court's decision is governed by the Sixth Circuit's decision in *Paige.* The holding in *Paige* is that the perfection of a security interest in a motor vehicle which is brought into a jurisdiction which has adopted the 1962 version of the Uniform Commercial Code continues if the certificating state requires indication of the security interest on the certificate of title as a condition of perfection and the security interest is perfected in the jurisdiction which issued the certificate of title.[4] Applying the holding of *Paige* to the instant facts, the court finds that the security interest of Associates is perfected by virtue of the Virginia certificate of title and that the interest is not unperfected as a result of the removal of the vehicle from Virginia to Tennessee. The statute under scrutiny herein, Va.Code § 8.9–103(2)(b) provides that:

> [p]erfection and the effect of perfection or non-perfection of the security interest are governed by the law . . . of the jurisdiction issuing the certificate until four months after the goods are removed from that jurisdiction *and thereafter until the goods are registered in another jurisdiction. . . .* (Emphasis added.)

There was in fact no registration of the vehicle in another jurisdiction *after* removal from Virginia to Tennessee. If there had been, the court would have been confronted with a different question. Since perfection of the interest of Associates is governed by the law of Virginia, the certificating state, that interest remains perfected because the Virginia certificate of title is valid and unsurrendered.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

Submit judgment.

---

**4.** This was the holding of this court in *In re Canter,* 8 UCC Rep. 252 (E.D.Tenn.1970). See also *General Motors Acceptance Corporation v. Whisnant,* 387 F.2d 774, 4 UCC Rep. 1016 (CA 5th 1968).